The first case today is No. 241069 and 241438, United States v. Kenneth Pontz. Will attorney for the appellant please come up and introduce yourself on the record to begin? Good morning, your honors. My name is James Sultan, attorney for defendant appellant Kenneth Pontz. And Judge Helping, may I reserve three minutes for rebuttal? You may. Thank you, your honor. May it please the court. Defendant Kenneth Pontz was indicted in June of 2022, I'm sorry, June of 2022 and convicted following a jury trial for theft of government money between 2014 and May of 2020. The government's allegation was that Pontz lied to the Social Security Administration in 2004, and again in 2014, when he said he lived alone, where in fact he lived with his wife Lisa, and if the SSA had known that he lived with his wife, he would have received substantially less in monthly SSI benefits. So the difference was the alleged theft. Pontz makes two arguments on appeal to challenge his conviction. First, most of the government's case was presented through an SSA claims technical expert named Louis Aguayo. Aguayo explained the SSI program, he interpreted Pontz's SSA records, he testified that Pontz had told the SSA in 2004 and in 2014 that he lived alone. He stated that Lisa Pontz had obtained at least $100 a month in disability payments during that period of time. He explained that Lisa's disability payments should have been subtracted from Kenneth Pontz's SSI benefits under the applicable regulations, and he thus opined that Pontz's SSI benefits would have been significantly reduced if the SSA knew that Pontz was in fact living with his wife Lisa during that period of time. Pontz repeatedly asserted at trial and reiterates on appeal that this testimony was, or much of this testimony, which was critical to the government's case, was erroneously admitted because it was admitted under the rubric of lay opinion testimony, testimony under Rule 701, because the government chose not to disclose Aguayo as an expert under Rule 702 when much of this testimony they just described was based on his specialized knowledge as a claims technical expert for the SSA. And the issue here, your honors, is very close to the issue addressed by this court in a case which I believe was tried by Judge Helpe. And in the decision of this court, written by Judge Torea, and I believe Judge Thompson was on the panel, this court said that in Vega, the testimony of a, that was a Medicare fraud case, the court said that the testimony of an administrator and a Secret Service agent in that case was inadmissible, it was improper to admit that testimony because it was, in fact, expert testimony based on specialized knowledge, which the government there, as here, tried to shoehorn under the rubric of lay opinion in 701. And that is exactly what, that exactly, according to the advisory committee notes, why Rule 701 was changed in 2000. It was changed to prevent parties from using, yes, your honor? Did the records themselves from Social Security come in as business records? I'm sorry, I couldn't hear you. Did the records from Social Security come in as business records? Some of the records did come in as business records, eventually, and I'm not complaining about the fact that Ponce's Social Security record came in, although Lisa Ponce's records were never introduced, were never even disclosed to the defendant prior to trial. So I'm not complaining about the records. I'm complaining about the testimony as the trial lawyer complained about the testimony, interpreting the records, and opining about the significance of those records, which was clearly based on specialized knowledge. Counsel, why is that specialized knowledge rather than just his personal knowledge based on his time working there? He has to look at records like these as part of the ordinary day-to-day work that he does from what I have read, and so that's just his personal knowledge working in the organization. He's not interpreting complex Medicare regulations. He's just talking about the types of documents that he sees every day. So why is that specialized knowledge rather than just personal knowledge based on his everyday work? Well, and that's the government's argument, Your Honor, and it's exactly what this Court said in Vega, that specialized knowledge is knowledge that involves regulations. It involves interpreting. It involves applying them. These regulations are complicated. The fact that he deals with these every day is not important. But he wasn't applying, Counsel, I don't think he was applying any regulations. He was describing, from what I understand, and it would be helpful if you could respond, he was describing the types of documents that are found in these files, saying that a lot of the work is done on the computer, so here's a screenshot. This is what the screenshot generally shows in the process of reviewing applications. Why is that specialized knowledge rather than just, you know, explaining this is how we do our job. This is the kinds of documents we look at. Sometimes they're on a computer, and so this is a screenshot of those documents. Well, Your Honor, what the advisory notes in 2000 say is that to fit under 701, it has to be essentially based on the kind of reasoning that everybody has. So in this case, this man is a claimed technical expert. He's interpreting these documents. If he was just saying in general, I'll tell you what SSI is, that's different. But he looks at the documents. He says Lisa Ponce was obtaining at least $100 a month in disability benefits, which is not in any record that's in evidence. And then he opines that Kenneth Ponce's benefits would have been significantly less. Of course, that's based on specialized knowledge. That's not just something he knows the way everybody else knows. Isn't this just like a mathematical formula? He's adding plus 2 here, minus 2. This is what you get. And anybody can do that. Well, it's specialized knowledge to know that her benefits should have to be subtracted from his benefits. It is complicated. There are certain offsets, there are certain exceptions. It's exactly what happened in Vega. Counsel, how is that specialized knowledge? Because again, I think most people would understand that when you apply for benefits that are means-based, that any income that might be coming in from certain sources is going to be considered in determining your benefit. How is it specialized knowledge to say if there was additional income that he hadn't disclosed, it would have reduced his benefits? What is specialized about that? Because it's based on an interpretation and application of regulations. I agree, you could look at it that way. But when the Supreme Court changed the rule, they want 701 to be narrowly construed. They were concerned about using 701 as a way of evading the notice and reliability requirements of 702. That's what the judge said in this case. He had a pretrial order saying, I interpret this strictly. If you have any question about which category it's in, you need to give notice that this is an expert witness. So it's subject to interpretation, but the way that the Supreme Court intended it to be interpreted through the advisory notes, the way that this court interpreted it in Vega is precisely the way that I'm trying to interpret it and that Mr. Ponce's trial lawyer sought to exclude it here. It's essentially trial by ambush, which is exactly what 701, when it was amended, is trying to do. There were parts of the testimony he said, this would be expert testimony. So it's not going in this way. What you're saying is even what came in still violates the rule. Yes, what came in was expert. When he said it would have been significantly higher, lower. When he said that Lisa Ponce was making, should have been her test, her benefits should have been subtracted. Her benefits are over here. His benefits are over there. This man is explaining all of this to the jury. This is based on his knowledge and interpretation of specialized regulations. So that's the argument. The significant lower opinion, was that objected to? Trial counsel objected repeatedly to the use of Aguayo in this manner. And there were some things, there were certain sentences that came out of Aguayo's mouth he did not object to at the time. But the scope of Aguayo's testimony was, I mean, it was addressed repeatedly both during trial and after trial when the trial judge said, I drew the line. I decided significantly was OK as a lay testimony. So I think this is not a case of sandbagging. This is a case where the trial judge was well aware of this issue. It was repeatedly litigated during the trial. And the fact that the trial counsel did not object to every single sentence that came out of Aguayo's mouth should not result in this court failing to reach the merits of the argument. Counsel, this was an indictment that charged embezzlement over a specific amount. And was there any quibbling at all below about what significantly reduced meant vis-a-vis the specific elements of the indictment itself? Your Honor, the indictment requires $1,000. So I don't think that that was an issue. May I turn briefly to the statute of limitations argument? Just to pin that down. I'm sorry, Your Honor. So the opinion, if we think the opinion that it would have significantly reduced it was OK, then you're not making an argument that that would be insufficient to establish the element of over $1,000. That's correct, Your Honor. If that properly came in, I'm not arguing insufficiency of the evidence. I'm arguing it shouldn't have come in. With respect to statute of limitations, both sides agree the issue is whether the trial judge correctly viewed this theft offense, 641, as a continuing offense under the Supreme Court's test in the United States versus Toosie. In Toosie, the Supreme Court said that a reviewing court must look to the nature of the crime. And the issue is whether you look at this in a categorical way or whether you look at it in a case-specific way. And this court has not specifically addressed this question. But of the court's appeals that have, seven out of eight have said you look at it categorically. That's what the court did in Toosie. That's how this question should be analyzed. And so the count is 7 to 1. And this court should join the vast majority in saying that. Why is Smith from the Fourth Circuit wrong, wrongly decided? It's wrong because in Toosie, the Supreme Court said, look to the nature of the offense. They said this is a narrow exception. They say you have to only allow the exception if it is clear that Congress intended that this be treated as a continuing offense and that the rule of lenity applies. And they looked at it from a categorical standpoint in Toosie. They did not look at the defendant's specific alleged conduct. And all these other seven courts have said that's the correct way to analyze statute of limitations issues. Statute of limitations are to be applied generously in the interest of or opposed. And that's why those seven other courts are right. And that's why two of the three judges who were on the panel in Smith in the Fourth Circuit are wrong. Thank you. Thank you, Your Honor. Thank you, counsel. Attorney for Appley, please come up and introduce yourself on the record to begin. Good morning, Your Honors. Ashley Robertson for the United States. May it please the court, I'll pick up where counsel just left off on the statute of limitations question. And at the outset, I want to clarify that the government is not relying solely on Mr. Ponce's specific conduct in this case. We agree that as a threshold matter, this court needs to determine whether Congress intended to treat embezzlement in Section 641 as a continuing offense. And we think that it did for a few reasons. That starts with the nature of embezzlement itself, a crime that courts have traditionally treated as a continuing offense, and that this court in United States v. Daley recognizes the type of offense that by its nature contemplates. Counsel, you don't disagree that this gentleman could have been charged after his receipt of the first check, do you? We do actually disagree on that point, Your Honor. And that's because... How many did he have to receive before the crime was complete? So one of the elements of the felony offense that he was charged with is that the total loss adds up to more than $1,000. So the offense under any test would continue at least until that $1,000 threshold is met. And we think that penalty provision is quite significant to the question in this case. But counsel, wasn't the $1,000 met pretty early on? So there was a disagreement about that below. Mr. Ponce would dispute below whether the $1,000 threshold was ever met. We do think that it was met very quickly. But I think as a general matter, because this isn't case specific, this is a question, as I said, about how Congress intended to treat embezzlement in Section 641. All right. Well, let's say he met it after check number six. You agree he could have been charged assuming that the $1,000 threshold was met? Yes. He could have been charged at that... And it seems to be inconsistent with your argument that this could go on and on forever because it suggests that there would be no repose. No, Judge Thompson. So all the time, the government can charge a crime as soon as the statutory elements are met. So if the government detects a conspiracy after the first overt act, it could charge it. But if the crime goes undetected, like this one was, the continuing offense doctrine allows the government to charge the crime or allows the statute of limitations to run when the course of conduct ends. And if I could... Counsel, I'm just struggling with your argument because I think the dissent in Smith made a very good point. And if you agree that we do have to look at the statutory language and what Congress intended, which I do think is very clear from 2C rather than the underlying conduct, what the dissent in Smith says is that embezzlement by its nature does not have to be continuing. You could embezzle $1,500 in one act. And there's all sorts of embezzlement that could happen just with a one-time illegal act by a defendant. So given that that's the case, that it can be a single act, how can you... What is your basis for saying that it's the nature of the crime is continuing? If it can happen once, then it's not a continuing offense by its nature. So we don't understand 2C to say that every permutation of an offense must be done in a prolonged manner in order for Congress to intend to treat that offense as continuing. And there's no reason to think that Congress would want that result. Rather, you have an offense here where Congress has understood that separate transactions are linked. And we know that from Paragraph 3 of Section 641, the penalty provision I was talking about earlier, where Congress says that for purposes of reaching that $1,000 threshold, the government or the court must aggregate losses even across separate counts. So we know Congress viewed these transactions as linked for purposes of the penalty. And that same insight with control as to statute of limitations as well. Congress understood that... Or Congress was willing to say here, even when they're charged with separate counts, it would link the transactions. Counsel, I think what you're arguing is different from what 2C says. Because my understanding of 2C, and please tell me if I'm wrong, is that once the elements have been met, the crime is completed. And if it's not by its nature continuing, that's when the statute of limitations begins to run. So going back to Judge Thompson's question, if he had met the $1,000, or if in general one could meet the requirement after four transactions or one transaction, then the statute of limitations begins to run. It doesn't... The offense does not continue past that point under 2C. So you're correct, Your Honor, that there's two options. There's either the statute of limitations runs when the elements are first satisfied, or if it's a continuing offense, the statute of limitations runs when the course of conduct ends. So our argument is that this is a continuing offense. And we know that because of the nature of embezzlement is such that, as this Court said in Daly, it's a type of crime that by its nature contemplates that separate transactions will form a single... But how does the course of conduct not end when the elements are met? That's what I'm trying to ask you. How is this continuing in the way that a conspiracy continues even after the initial meeting of the minds, et cetera? Once the embezzlement is done, whether it happens in one transaction or four, the course of conduct is finished. What about it is continuing? So we disagree that the course of conduct is finished. And I think that's plain from the fact that Mr. Ponce, I don't take to dispute, doesn't dispute that his crime here actually continued throughout the charge period. That's why the government was able to charge it in a single count. So there's no doubt that embezzlement can be done in a continuing form. I think the question, as we discussed earlier... Well, and it can't be done in one. It can be done in one or it can be done in a continuing form. And I think the question is how Congress would intend to treat it. And I think there are a few clues that let us know Congress would intend to treat this as a continuing offense to capture what is often the case, as the Fourth Circuit said in Smith v. United States, that embezzlement is a type of crime that, to avoid detection, often occurs over a long time in small and recurring amounts. And the third paragraph of Section 641 shows that Congress understood exactly that fact. That's why it allows the court to aggregate losses even across separate transactions. And think about what it would mean if you did hold that the statute of limitations runs as soon as the elements are first satisfied. That would mean that a defendant who embezzles a small amount of money, say $10 per month, receives a windfall. Because that crime, under any test, would continue for years. But a defendant like Mr. Ponce, who embezzles hundreds of dollars per month, the elements of his crime will be satisfied sooner. So what you're saying is that these two differently, well, defendants who embezzle different amounts, they should be treated equally for the purpose of continuing. Because otherwise, the one who steals for, let's say, for 10 years, $10 a month, until he hits that $1,000 threshold, you're not going to be able to charge. Versus the other one, you can charge in one month, or it could be a couple months, or there should be no difference in the government's opinion. Yes, that's exactly right. We don't think there's any reason that Congress would intend to treat those defendants differently for statute of limitations purposes. And the fact that embezzlement, as the dissent in Toosie noted, was one of the crimes that has traditionally been treated as continuing, is information Congress would have. The Fourth Circuit, I think, does a good job of walking through the history of embezzlement. It cites a case from the Supreme Court of Maryland that speaks to what I was discussing earlier, that embezzlement is often committed over prolonged course. That 1950 decision issued just around the time that Congress enacted Section 641, and shows that Congress would have understood that this was the nature of the offense. But again, you don't have to speculate as to what Congress intended here, because Congress tells us in the penalty provision of Section 641, that it saw a link between separate transactions. It knew that it was possible. I still don't understand why the penalty provision, which just tells us that the elements may not be met until several transactions have occurred, answers the question of whether it's a continuing offense after the elements have been met. That's the critical question under Toosie. So I'm just not quite understanding, you know, the logic of just because you need several transactions to meet the elements, therefore it continues after the elements are met. How are those connected? So the reason that we think the penalty provision is important is not just because it establishes a $1,000 threshold. It's because Congress allows you to aggregate the losses among separate transactions. So transaction month one, transaction month two, transaction month three, to reach that $1,000 threshold. That's unusual. So for instance, with drug distribution, the government can't aggregate drug quantities across separate transactions to reach a threshold for a distribution count. But here, Congress, on the face of the statute, instructs courts it should aggregate amounts across separate transactions. And we think that speaks to the fact that Congress had in mind that these transactions wouldn't be entirely separate, that they would form one continuing scheme. And if Congress is thinking of this as one continuing scheme, that's why we think that it would treat it as a continuing offense for statute of limitations purposes. And I did want to say, because in his reply brief on page eight, Mr. Ponce suggested for the first time that the Fifth Circuit would decide this case in his favor. We disagree with that. We think that the Fifth Circuit, in a case called United States v. Edelkind, that's at 525-F383, has a decision that is quite helpful to the government. It deals with failure to pay child support. Failure to pay child support, too, can take the form of discrete failures, failure to pay over different months. But the Fifth Circuit also looked to a similar penalty scheme, which says that the government could only bring a prosecution if the losses either occurred over a two-year period or added up to $10,000. And the Fifth Circuit thought it significant that Congress understood that losses would accumulate and persist over time. And I think that's similar to the argument we're making here, that the fact that Congress allows you to aggregate across separate transactions says something about how Congress understood the nature of the offense here. So, counsel, is your argument that the explicit language of the statute because of the penalty provision compels the conclusion, or is your argument that the nature of the offense is— It's the latter. So where courts have said that the explicit language compels the conclusion, it's usually where the offense on its face says, this is a continuing offense. And we can see there's nothing like that in this statute. So we are relying on 2C's second prong, the nature of the offense. But we do think that there's language in the statute that shows that Congress contemplated a continuing course of conduct here and really wanted to account for it. Congress wanted to capture the full loss amount, even if it did occur in separate transactions, even if it was charged in separate counts. So whereas here an offense is continuing and allowed to be charged in a single count, we just think there's no reason that Congress wouldn't want to capture the full scope of this criminal conduct simply because it's hard to detect. The full loss amount. I mean, there's a difference between capturing the full loss amount when it comes to, like, related conduct and restitution. But does it mean that the statute of limitations would necessarily be applicable to the offense itself? So I think, Judge Thompson, that here this question really does come down to restitution. And I am happy to discuss remedy if the court disagrees. Because we don't think that this question actually affects whether Mr. Ponce's conviction was valid or the sentence that he served was properly imposed. We do think this goes to restitution. And we do think the question here is whether the government is going to be able to recapture the sum total of money that Mr. Ponce embezzled over the course of his criminal scheme. Counsel, you have about two minutes. But if you could discuss the Rule 701 issue. And specifically, counsel alluded to the Vega case, which I tried years ago, and I was reversed. Why didn't the district court commit the same type of error that I committed in Vega? Or what's the difference? Judge Helfey, we actually think that. Why wouldn't the government just name this person as an expert witness? I just couldn't. It was hard to get beyond the fundamental trial strategy there. So to that question, Judge Thompson, it's my understanding from the U.S. Attorney's Office that this type of testimony is quite common. And this is apparently the second time the government's ever received an objection to this type of testimony. The first was in the District of Maine and withdrawn in trial. So there was no gamesmanship here by the government. I think we were caught off guard by the objection, because frankly, this is just classic lay testimony. And this gets to Judge Helfey's question. So I was right then. At least back then. We think Vega actually supports our argument here, because Vega had two holdings. Yes, it held that the witness couldn't testify to the ins and outs of Medicare regulations. But it also held that the witness could interpret. Only if this person worked there and had specialized training, could it be in any way thought of as this person having a layman's opinion? I mean, the layman's opinion is based on the specialized training that he received as a Social Security agent. So his testimony here is based on his experience on the job. But as this court has said time and again. If he didn't have the job, he wouldn't have the knowledge. But I think, Judge Thompson, this court has said in Valdivia, even Vega itself has said that testimony under 701 often comes from experience gained on the job. And it's often useful to the jury, precisely because it's not knowledge they would otherwise have. For example, there's a circuit case. I believe it's from 209 U.S. versus Ayala Pizarro, 407F38. And there it talks about policemen observing drug points. And he's saying, well, basically, I've been on the beat for 15 years or more. I've been under cover. I've done this and that. And I can tell that's a drug point or something. Is this kind of like that? That was considered late testimony in that case. Yes, Judge Helpe. We think it's exactly like that. So just like in that case, the jury doesn't necessarily have all the information and experience that a police officer has or that Mr. Aguayo has. But the experience he has isn't technical or specialized. It comes from his experience on the job. And I do want to dispute what counsel said earlier, that this was knowledge that he gleaned from interpreting Medicare regulations. Mr. Aguayo was walking the jury through documentary evidence, which Mr. Ponce doesn't challenge, which made quite clear that if Mr. Ponce didn't report income from his household, his benefits would go down. You can see a sample letter on appendix page 497, which actually shows how his benefits were calculated. You take the maximum allowable amount. You subtract his income, which he had reported as zero, and you reach his total. I think any Social Security recipient, much less Social Security employee, would have been able to speak to the fact that, as Judge Rickleman said earlier, if it turns out you do have income, and here there was other evidence, not for Mr. Aguayo, that Mrs. Ponce was receiving $1,100 in SSDI benefits, that his income would be significantly reduced. In fact, I think the district court was really cautiously policing this line, going above and beyond to resolve benefits to the doubt in Mr. Ponce's favor. So I think it's quite difficult here to say that there was any manifest abuse of discretion. And of course, we think for many of his challenges, plain error review is appropriate. Go ahead, Judge Ponce. Go ahead, then I go. Okay. Some of the evidence that was admitted was not contested. And given the uncontested evidence that was admitted, I guess I was grappling with whether this was harmless error anyway, even if we considered it error. Yes, we do think that there's harmless error here. So as I was saying earlier, one of his objections is to the fact that Mr. Aguayo spoke to Mrs. Ponce's Title II benefits, but that evidence came in from multiple other witnesses in far more specific ways. There was also documentary evidence. This is an appendix, page 697, that showed that Mr. Ponce had reported to his probation officer that Mrs. Ponce was receiving $1,100 plus. So we don't think that to the extent there was any error there, that it was anything other than harmless. As to the significantly reduced testimony, I also think that this would have been easy for the jury to understand even without Mr. Aguayo's testimony, because as I was saying, the jury had before it information that Mr. Ponce himself had received from the Social Security Office, which spoke to what happened if his living situation changed. It said repeatedly every year that if his living situation changed, his benefits would change. And he received a pamphlet. This is on appendix, page 504, which gave a sample calculation of somebody who was receiving $270 of benefits each month, won a scratch-off lottery for $200, and their benefits go down to $70. So I don't think the jury would have had any trouble concluding, even without Mr. Aguayo's testimony, that Mr. Ponce's benefits would have been similarly significantly reduced had he properly reported the income here. But the very fact that this is accessible to the jury and would have been readily tested on cross-examination also speaks to why there was no error, because this is classic lay testimony. Counsel, can I ask you to go back to the remedy point if we were to disagree with the government on whether this is a continuing offense? You had said in your brief that there wouldn't need to be a retrial. The court could determine the issues. Can you explain what you mean there? Sure. So at the outset, I want to say Mr. Ponce in his brief has requested a dismissal of the indictment. The court should decline that information because the indictment on its face charged conduct that was sufficient to satisfy the elements of 641 within the limitations period. If there were any error here, we think it's what Mr. Ponce says on page 40 of his brief, which is a failure to instruct the jury that it needed to consider, needed to find that all the elements were satisfied within the limitations period. That's if you disagree with us, of course. And that type of error, if preserved, would be reviewed for harmless error. And you could conduct that inquiry yourself as the Eighth and Tenth Circuits did in the cases on which Mr. Ponce relies. Or you could remand to the district court to address in the first instance. I do want to flag that if you remand to the district court, Mr. Ponce's counsel conceded below before that court that the statute of limitations question only went to restitution, not to his sentence or conviction. That's at docket 134, transcript page 22. So I would expect the district court would hold counsel to that concession if you remand. And if you look at the inquiry yourself, as I said, it's harmless if preserved. Mr. Ponce's proposed jury instructions at docket 65 didn't ask for an instruction that the conduct needed to be found within the statute of limitations period. So the review, I think, technically would be for plain error. But in our brief, I think we were more generous and said you could simply remand to the district court. And my final question. Let's assume we were to reverse and send the case back. Moving forward, this case and probably other cases, it would require from the U.S. attorney's office is then that it disclose all these witnesses, whether it's a police case or embezzlement case, as an expert. Am I correct? That's exactly right, your honor. It's only a matter of earlier disclosure rather than disclosure of trial. Yes, that's exactly right. So moving forward, I think the government would disclose these witnesses as experts and that would create an added burden, of course, on the parties and the courts to test it out. It's probably a Doe-Bird hearing at some point. But if it's admitted as an expert, then the issue is, is this person an expert or not? Yeah, yes, that's exactly right. So that is what would happen moving forward. But we really urge the court to make clear that at least to what Mr. Aguayo testified to was lay testimony. And I do think it would be a sea change if the court treated it otherwise. You have binding precedent on police officers. This is a case of first impression in our jurisdiction. We think that this case does involve the straightforward application of those precedent to these facts. And the district court did rely on this court's opinion in United States versus Galatas. It was one of the two cases that the district court cited where this court allowed lay witnesses to testify to the meaning of certain Medicare terms. So we do think that that's an analogous fact pattern to this one. OK, thank you, Counsel. Thank you. Thank you, Counsel. Will Attorney Sultan please come up and reintroduce yourself on the record to begin? You have a three minute rebuttal. Thank you, Your Honors. Let me start with the statute of limitations argument, which I think the court's questioning of my sister has kind of crystallized. So let me first, with respect to remedy, I don't understand this. My argument heading, my brief, the district court erred in denying Ponce's motion to dismiss the indictment on statute of limitations grant. There was a pretrial motion to dismiss. The judge denied it, saying that he thought it was a continuing offense. So that's the issue. There's no restitution. That's not about restitution. It's about the indictment. 2C says that you look at the nature of the crime involved. That's what controls. 18 U.S.C. 641 is not inherently a continuing crime, as this court clearly understands. It can be violated in a single act, on a single day. Continuing crime is a term of art. Judge Helpe said that in his decision, Rivera-Ortiz. He said a continuing offense is not the same as a scheme or pattern of illegal conduct. It doesn't matter whether they say it's a scheme. It doesn't matter whether they say it's recurring. It's a term of art. Continuing crime is a special kind of crime, like bankruptcy, fraud, concealment. That's a continuing crime. They could have charged this case as a continuing crime. They could have used 42 U.S.C. 1383A, which is a concealment crime. You lie and then to get benefits, and then you conceal or fail to disclose the lie. That's a continuing crime. That's not how they chose to charge it. They charge it as a single count under 641. That is not a continuing offense. Now, they keep talking about Daly. Daly is not a statute of limitations case. In Daly, this court spent one paragraph rejecting the appellant's argument that the counts in that case were duplicitous. Statute of limitations has nothing to do with Daly. This court has never addressed this question under Toosie, whether you look at it categorically at the nature of the offense or whether, as two judges said in the Fourth Circuit in Smith, you look at the conduct of the defendant in a particular case. That's the issue squarely presented. Counsel, how do you respond to the government's argument about the penalty provision? The penalty provision. So, I mean, I mean, that's a frivolous argument. Look at paragraph 3 of 1641. What that is about is about where separate counts of theft are charged. You can aggregate those separate counts in deciding whether the $1,000 threshold is met. That's what it refers to. I mean, it's got nothing to do with statute of limitations. They didn't, if they had charged this case as, you know, a bunch of separate counts, obviously, they could not have charged any counts that were more than five years before the indictment of June of 2022. And they can't get around their statute of limitations infirmity by throwing it all into one count and calling it recurring. I urge this court to, you know, read Toosie, read Yesher, read Askia, read Green. And as far as the Fifth Circuit case, if I could just have a moment, because they refer to that. So the Fifth Circuit case, which I cite in my reply brief on page eight, Tavares-Lavario, where the Fifth Circuit held that the use of counterfeit immigration documents is not a continuing offense, where, quote, under Toosie, the analysis of whether a crime constitutes a continuing offense involves examining the offense itself, not the defendant's particular conduct. That is exactly the standard used by all these other courts. It's exactly the standard endorsed in Toosie. And it's the standard that this court should adopt in ruling that the trial judge erred in denying the motion to dismiss in this case. Well, thank you. Thank you, counsel. Thank you, counsel. That concludes arguments in this case.